*E-Filed 2/25/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

PATRICIA MADRIGAL,

        Plaintiff,

v.

MICHAEL S. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C 09-04608 RS

**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Patricia Madrigal, challenges the final decision of the Commissioner of Social Security denying her request for Title II disability benefits. 42 U.S.C. §§ 416(i), 423. The parties have cross-moved for summary judgment. Madrigal requests that this Court reverse the Commissioner's decision, or alternatively, that this Court remand the case for the benefits she claims are owed. Because the decision of the Administrative law Judge ("ALJ") is supported by substantial evidence and free of legal error, the Commissioner's cross-motion for summary judgment is granted and Madrigal's motion for summary judgment is denied.

## II. FACTS AND PROCEDURAL HISTORY

A. <u>Factual Background</u>

Madrigal, a fifty-eight-year-old mother of three, worked for the San Jose Mercury News for approximately twenty-two years. (AR 1357, 1363.)[1] Madrigal was employed

---

[1] All references to "AR" pertain to the Administrative Record lodged in this action.

full-time until she suffered a repetitive stress injury in 1993. (AR 1358.) Subsequently, Madrigal was placed on a modified part-time work schedule. (AR 1357-58.) In 1999, Madrigal was laid off because her employer could no longer accommodate her. (AR 237, 1358.) She has not been employed in any capacity since. (AR 1358.)

October 2, 2001, Madrigal protectively filed a claim for disability benefits alleging affective mood disorder and disorders of muscle, ligaments, and fascia, with onset date of April 1, 1999 ("initial application"). (AR 23, 56.) Madrigal's application was denied in an initial determination on January 23, 2002, and she did not request review of the denial. (AR 56.) Accordingly, the decision denying her benefits became the final determination of the Commissioner of Social Security. (AR 23, 177.)

On August 30, 2004, Madrigal filed a new application for disability insurance benefits again alleging disability since April 1, 1999. (AR 178-80.) This application was denied initially, upon reconsideration, and by ALJ decisions issued on February 17, 2006, and March 26, 2007. (*Id.*) Both ALJ decisions were appealed, and in each case, the Appeals Council vacated the ALJ decision and remanded for further proceedings. (*Id.*) Madrigal's eligibility for disability insurance benefits expired on December 31, 2004 (the "date last insured"), and the Commissioner asserts res judicata as to her initial application.[2] Hence, Madrigal is eligible to receive benefits only if she proves disability for a continuous period of at least twelve months between January 24, 2002, and her date last insured (the "relevant period"). (*Id.*; AR 24-25.)

The record contains nearly 900 pages of Madrigal's medical history. Around June 6, 1999, Madrigal was examined by treating physician Ralph Pietrobono, M.D., for chronic pain in the left cervicothoratic region, left shoulder, and arm. (AR 409-412.) A magnetic resonance imaging ("MRI") study of Madrigal's cervical spine showed some mild to moderate disk bulging, but was otherwise normal. (AR 402.) On August 25,

---

[2] A decision denying Social Security benefits only has res judicata effect for the time period covered by the earlier application, and not for any subsequent period. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986).

1999, another physical examination by Dr. Pietrobono revealed that Madrigal's joints were all normal. (AR 405.)

In July of 1999, Paulette Jacome, Ph.D., found that Madrigal suffered from severe depression and moderate anxiety and assigned her a Global Assessment of Functioning ("GAF") score of forty-five.[3] (AR 857-58.) Approximately three months later, Alberto Lopez, M.D., gave Madrigal a GAF score of sixty.[4] (AR 874.) Dr. Lopez commented, "Ms. Madrigal . . . is not precluded from going back to her usual work on a psychiatric basis." (AR 875.) On December 9, 1999, treating psychologist Lisa Isaac, Ph.D., diagnosed Madrigal with major depressive disorder and chronic pain disorder. (AR 446.) Dr. Isaac's follow-up treatment notes indicate that on January 3, 2000, Madrigal's affect was "somewhat brighter" and "stabilizing." (AR 442.) On April 6, 2000, Dr. Isaac opined that Madrigal was a qualified injured worker "on the basis of her physical limitations," but that "[h]er permanent psychiatric disability *per se* would not preclude her from performing her customary work duties . . . ." (AR 439.) On April 30, 2003, Dr. Isaac reported that Madrigal's psychological assessment appeared unchanged from her April 6, 2000 assessment. (*Id.*)

On December 16, 1999, a physical examination by treating physician Maureen Miner, M.D., noted Madrigal's limited range of motion, tenderness, and some muscle thickness. (AR 414.) The next day, Laeeq Ahmad, Psy.D., and Janine Marinos, Ph.D., conducted a psychological screening evaluation and concluded that Madrigal had

---

[3] A GAF score is an estimate of an individual's psychological, social, and occupational functioning. *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of forty-five indicates serious symptoms or a serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, at 34 (4th ed. 2000) ("DSM-IV-TR"). The GAF scale "does not have a direct correlation to the severity requirements in [the Administration's] mental disorders listings." 65 Fed. Reg. 50,746 (Aug. 21, 2000).
[4] A GAF score between fifty-one and sixty indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). DSM-IV-TR; *Becker v. Comm'r Of Soc. Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *6 n.2 (3d Cir. Dec. 13, 2010).

1 adequate ability to perform activities of daily living, to remember, to carry out simple job
2 instructions, and to function socially. (AR 463).

3   On October 31, 2004, another MRI showed that Madrigal's spine was normal.
4 (AR 687.) Approximately three weeks later, a neurological examination by C.E. Gable,
5 M.D., revealed that Madrigal's cranial nerves were intact and her tendon reflexes in both
6 arms were "very brisk" and symmetrical. (AR 636.) On December 7, 2004, David Chen,
7 M.D., examined Madrigal and assessed, from a neurological point of view, that her
8 symptoms were of a "functional," rather than physiological nature. (AR 669.)

9   On December 9, 2004, D. Ashley Cohen, Ph.D., examined Madrigal and
10 concluded that nothing about her presentation suggested "serious mental disorder or
11 significant cognitive deficit that would result in a marked functional impairment with
12 respect to sustained employment." (AR 647.) Dr. Cohen gave her a GAF score of
13 seventy.[5] Shortly after her date last insured, on January 11, 2005, Pearl Peskin, M.D.,
14 diagnosed Madrigal with affective mood disorder, but found that her mental impairments
15 were not severe and that she had a GAF score of seventy. (AR 650-51.)

16 B.  The Appeals Council Remand Order

17   On July 24, 2008, the Appeals Council remanded Madrigal's case, finding that she
18 had symptoms of depression and was diagnosed with major depressive disorder, but that
19 the ALJ did not make his own findings of fact regarding the severity of her resulting
20 limitations. (AR 147.) The Appeals Council also found the ALJ failed to state clearly
21 how he arrived at Madrigal's Residual Functional Capacity ("RFC"), and failed to assess
22 the weight he gave to each of the opinions of record in determining her RFC. (*Id.*)

---

[5] A GAF score of seventy indicates a person with some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well; has some meaningful interpersonal relationships. DSM-IV-TR.

No. C 09-04608 RS
ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

4

The Appeals Council instructed that on remand: (1) a new ALJ should hear the case; (2) the ALJ should give further consideration to Madrigal's mental impairments;[6] (3) the ALJ should give further consideration to Madrigal's maximum RFC "during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations[;]" (4) the ALJ should evaluate the medical source opinions and explain the weight given to such opinions; (5) the ALJ should "request the treating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments during the period at issue," and that in so doing, the ALJ "may enlist the aid and cooperation of the claimant's representative" to develop evidence from Madrigal's treating sources; and (6) the ALJ should obtain supplemental evidence from a vocational expert. (AR 148-49.)

### III. STANDARD OF REVIEW

This Court has jurisdiction to review a final decision of the Commissioner of Social Security and to enter judgment affirming, modifying, or reversing such decision with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Commissioner's decision will not be disturbed if it is supported by substantial evidence in the record and the proper legal standards were followed. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence requires more than a mere scintilla, but less than a preponderance of evidence. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

---

[6] The Council asked the ALJ to make explicit findings of fact necessary for a proper evaluation of Madrigal's mental impairments under subpart "b" of section 404.1520a. Subpart b outlines a "special technique" that must be followed during administrative review to—among other things—help "identify the need for additional evidence to determine impairment severity." § 404.1520a(a).

To determine whether substantial evidence supports the Commissioner's decision, this Court reviews the administrative record as a whole, considering adverse as well as supporting evidence. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1992). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).

## IV. LEGAL STANDARD

An individual is "disabled" under the Social Security Act if he or she is unable to engage in a substantially gainful activity due to a physical or mental impairment (or a combination of impairments), and the impairment has or is expected to result in death, or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). Such "impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical or laboratory diagnostic techniques." *Green*, 803 F.2d at 530 (citing 42 U.S.C. § 423(d)(3)).

The Commissioner follows a five-step sequential process to determine whether a claimant is disabled:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. 20 C.F.R. § 404.1520(a)(4)(i).[7]

Step two: Does the claimant have a "severe" impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities? If so, proceed to step three. If not, then a finding of not disabled is appropriate. § 404.1520(a)(4)(ii).

---

[7] Unless otherwise indicated, all further regulation citations refer to Title 20 of the Code of Federal Regulations.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. § 404.1520(a)(4)(iii).

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five. § 404.1520(a)(4)(iv).

Step five: Does the claimant have the RFC to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. § 404.1520(a)(4). The Commissioner carries the burden of proving a claimant can perform other substantial gainful work in the national economy. § 404.1520(a)(4)(v); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

V. DISCUSSION

A. The ALJ's Decision

On December 22, 2008, a hearing was held in San Jose, California, where the ALJ heard testimony from Madrigal, medical expert Alan Coleman, M.D., and a vocational expert. (AR 1353.) Dr. Coleman testified that after reviewing the record, he found that none of Madrigal's impairments met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 either individually or in combination. (AR 1367.) Dr. Coleman further testified that Madrigal's chronic pain syndrome was not supported by any evidence of "organic disease." (AR 1368.) After examining Madrigal's 1999 MRI, Dr. Coleman stated Madrigal's spinal cord was normal, and that none of her complaints correlated with the "mild disk bulge and associated posterior hypertophic ridging at C5-6." (AR 1370-71.) Dr. Coleman also testified that the MRI showed no evidence of nerve impingement or nerve damage which may have resulted in pain, and that any abnormalities shown were insubstantial and common for Madrigal's age group. (AR 1373.) Dr. Coleman agreed with Dr. Chen, the neurologist who examined Madrigal in 2004, that her symptoms were largely "functional" and not a result of any demonstrable

1  medical condition.  (AR 1373.)  The doctor concluded that, based on the medical evidence
2  up to the date last insured, Madrigal's complaints were largely subjective and that she had
3  an RFC to do "medium" work.  (AR 1372.)

4  During the hearing, Madrigal stipulated to a disability onset date of March 17,
5  2002, the date of her fiftieth birthday.  (AR 1356, 1361.)  In a decision issued on February
6  4, 2009, the ALJ determined that Madrigal was not disabled for purposes of the Social
7  Security Act at any time between the alleged onset date and the date last insured.  (AR
8  39.)  In reaching that decision, the ALJ applied the requisite five-step sequential analysis.

9  At step one, the ALJ determined that Madrigal had not engaged in substantial
10 gainful activity between the alleged onset date and the date last insured.  (AR 26.)  At step
11 two, the ALJ determined that through the date last insured, Madrigal had a severe
12 combination of impairments consisting of mild osteoarthritis of the cervical spine,
13 unspecified arthralgias, and a pain syndrome of unknown etiology.  (*Id.*)  In so finding,
14 the ALJ discussed Madrigal's extensive medical history and pointed out that there was a
15 lack of objective findings to support Madrigal's allegation of more severe symptoms.
16 (AR 37.)  The ALJ accorded the greatest weight to the opinions of examining physicians
17 Drs. Lopez and Cohen, and to impartial medical expert Dr. Coleman, because they were
18 "mutually supporting and well supported by the evidence in the case record as a whole."
19 (*Id.*)  The ALJ assigned the least weight to the opinions of Drs. Pietrobono and Miner
20 because they were not supported by objective medical evidence and were based on
21 Madrigal's subjective complaints, which the ALJ found not credible.  (AR 37-38.)

22 As for Madrigal's alleged mental impairments, after extensively reviewing her
23 psychiatric medical history, and following the "special technique" set out in section
24 404.1520a, the ALJ determined that these impairments were not severe.  (AR 30.)  The
25 ALJ afforded the greatest weight to the opinion of Dr. Isaac because it was well-supported
26 by the evidence in the record as a whole.  (AR 29.)  The ALJ held that Dr. Isaac's report
27 supports the conclusion that Madrigal "has not suffered from a severe medically

28 No. C 09-04608 RS
ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

1 determinable mental impairment for a period of 12 consecutive months." (AR 29.) The
2 ALJ also afforded significant weight to the opinion of Dr. Lopez, which he found to be
3 consistent with that of Dr. Isaac. (*Id.*) Little weight was accorded to the opinions of Drs.
4 Jacome, Marinos, and Ahamad because the ALJ believed these were contradicted by those
5 of Madrigal's primary treating psychologist, Dr. Isaac, and examining doctors Lopez and
6 Cohen. (*Id*.) The ALJ noted that the former doctors treated Madrigal only briefly, "and
7 subsequent treatment notes and medical opinions issued by . . . Dr. Isaac . . . confirmed
8 that the claimant's mental impairments [had] improved significantly to the point that they
9 were nonsevere" before twelve months elapsed. (*Id.*)

At step three of the sequential evaluation, the ALJ established that Madrigal did not have an impairment or combination of impairments that met or "medically equaled" one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four, the ALJ wrote an extensive seven page section that took into account all of Madrigal's severe and non-severe impairments. (AR 31-38.) The ALJ concluded that Madrigal had an RFC to do "medium" work.[8] (AR 31.) Finally, at step five the ALJ considered the vocational expert's testimony, and determined that through the date last insured, Madrigal was capable of performing past relevant work as a customer service representative. (AR 38-39.)

B. <u>Madrigal's Challenge</u>

Madrigal appealed the ALJ's decision, but after the Appeals Council denied review on July 25, 2009, the ALJ's decision became the final decision of the

---

[8] The ALJ resolved that Madrigal was limited to lifting and carrying no more than fifty pounds occasionally and no more than twenty-five pounds frequently; she was limited to standing, walking, or sitting no more than six hours in an eight hour workday; she was limited to climbing ramps and stairs no more than frequently; and to balancing, stooping, kneeling, crouching, and crawling no more than occasionally; she was precluded from climbing ladders, ropes, or scaffolds; she had moderate limitations on her ability to understand, remember, and carry out complex or detailed instructions; and she had no more than a mild restriction of her ability to understand, remember, carry out short, simple instructions, make judgments on work-related issues, adapt to changes in a routine work setting, and respond appropriately to work stress. (AR 31.)

Commissioner of Social Security. Madrigal seeks reversal of the ALJ decision on several grounds. She asserts that: the ALJ failed to comply with the Appeals Council remand order and violated section 404.1512(e); the ALJ's assessment of her RFC is not supported by substantial evidence; and the ALJ erred when he found her mental impairments not "severe" at step two of the sequential evaluation.

### 1. Compliance with the Appeals Council Remand Order

Madrigal first contends that the ALJ failed to comply with the Appeals Council remand order to "request the treating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments during the period at issue." On remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." § 404.977(b). Additionally, an ALJ deciding a Social Security case has an independent duty to develop the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). If the ALJ is uncertain as to the basis of a doctor's opinion, he has a duty to conduct an "appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

In arguing that the ALJ did not comply with the Appeals Council remand order, Madrigal takes particular issue with the fact that the ALJ did not contact Drs. Pietrobono and Miner. Madrigal asserts that the ALJ made the "bald assumption" that these doctors' opinions were based merely on Madrigal's subjective complaints, but that there is no evidence indicating that they relied on anything other than physical examinations and objective data in diagnosing her. Madrigal, however, does not argue that the ALJ should have obtained additional information from physicians who treated her during the relevant period; nor does she argue that the ALJ failed to "take any action that is ordered by the Appeals Council" contrary to section 404.977(b). Madrigal only argues that the ALJ should have contacted Drs. Pietrobono and Miner, who treated her in 1999, for "clarification" as to the bases of their opinions. Madrigal disregards that the Appeals

Council ordered the ALJ to request more information from the treating sources to illuminate Madrigal's condition during "the period at issue," or in other words, the relevant period. It is difficult to see what, if any, additional evidence or clarification the ALJ should have obtained from Drs. Pietrobono and Miner. These physicians' reports significantly predate the relevant period and their determinations are evident in the record. Madrigal herself offers no such clarification; nor does she declare what it is that these physicians should have clarified.

The ALJ correctly emphasized at the outset of his opinion that any reference to Madrigal's medical records from outside the relevant period was made only to provide background information and give a clearer picture of Madrigal's impairments and complaints. *See, e.g.*, *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (quoting *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998)) (explaining that "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'"); *Samson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996) (stating that medical evaluations made after the date last insured are relevant to an evaluation of a pre-expiration condition). While Madrigal's prior and subsequent health histories are helpful to elucidate her impairments during the relevant period, medical records dating back to 1999 cannot establish that she was disabled during that period.

In any event, even if the Appeals Council had specifically ordered the ALJ to request additional clarification from Drs. Pietrobono and Miner—which it did not—the ALJ would still be in compliance with the order. The Appeals Council gave the ALJ the option of enlisting the aid and cooperation of Madrigal's representative in developing additional evidence. As the Commissioner argues, the ALJ exercised this option when he twice wrote Madrigal's representative requesting submittal of any additional information Madrigal wished to be considered in her case. During the hearing itself, when the ALJ asked of Madrigal's representative: "As to all those documents [in the exhibits list,] do you have any objection of the admission of evidence of any of them?" Madrigal's

representative responded: "None, whatsoever, and nothing to add."  The representative then stipulated that the documentary record was closed.  Nothing in the record indicates Madrigal ever asserted the ALJ should have requested further evidence from Drs. Pietrobono or Miner; nor did Madrigal herself request or offer any additional evidence or clarification from these doctors.  In short, the record makes it clear that the ALJ followed the Appeals Council remand order.

2.  Section 404.1512(e)

In a related argument, Madrigal asserts that the ALJ violated section 404.1512(e)[9] by not recontacting Drs. Pietrobono and Miner for clarification of Madrigal's condition on the theory that their reports contain a conflict or ambiguity vis-à-vis the medical evidence received by the ALJ.  The evidentiary standard of section 404.1512(e) calls on the Commissioner to recontact a claimant's treating doctors if the medical evidence is *inadequate* for the ALJ to determine disability.  § 404.1512(e); *see, e.g.*, *Tonapetyan v. Halter*, 242 F.3d at 1144, 1150 (9th Cir. 2001) (citing *Smolen*, 80 F.3d at 1288) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"); *Bayliss*, 427 F.3d at 1217 ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.").  Here, with support in the record, the ALJ found the evidence was adequate to make a determination regarding Madrigal's disability.  There is nothing that

---

[9] Section 404.1512(e)  provides in relevant part:
   Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is *inadequate* for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
   (1) We will first *recontact* your treating physician or psychologist . . . . We will seek additional evidence or clarification . . . when the report from your medical source contains a *conflict or ambiguity* . . . .
(Emphasis added.)

1 indicates otherwise. Accordingly, the ALJ did not have a duty to recontact Drs.
2 Pietrobono and Miner under section 404.1512(e).

### 3. RFC Assessment

Madrigal next contends that the ALJ's determination of her RFC as "medium" is not supported by an examining source, and hence, is not supported by substantial evidence. RFC is the most a claimant can do despite his or her limitations. § 404.1545(a). It is assessed by considering all the relevant evidence in a claimant's case record. *Id.* When a case is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

The Commissioner acknowledges that the ALJ relied on Dr. Coleman's opinion in determining Madrigal's RFC, but argues that "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). In *Morgan*, the Ninth Circuit held that the opinion of a nonexaming, nontreating doctor constituted substantial evidence because the doctor's opinion was supported by other facts in the record. *Id.* at 601. For example, Morgan's testimony directly conflicted with the assessments of his treating physicians, who reported significant improvement in his condition. *Id.* Consequently, the Ninth Circuit held that because the evidence in that case was "susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld." *Id.* (citing *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 750).

Here, Madrigal's medical history contains RFC assessments from numerous sources. For example, Drs. Pietrobono, Miner, Gable, and two state agency medical consultants all assessed Madrigal's RFC as more limited than the ALJ's "medium"

No. C 09-04608 RS
ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

13

assessment. The only medical opinion of record supporting the ALJ's determination is the testimony of Dr. Coleman. As a nonexamining physician, Dr. Coleman's opinion is presumptively entitled to less weight than the opinions of treating and examining physicians. *See, e.g.*, *Smolen*, 80 F.3d at 1285 (explaining that a treating physician's opinion is entitled to greater weight than the opinion of a nontreating, nonexamiming physician.) As in *Morgan*, however, Dr. Coleman's opinion is supported by other evidence in the record.

In his decision, the ALJ wrote that "although the claimant suffers from medically determinable impairments which could reasonably be expected to produce the symptoms she alleges, the claimant[']s statements concerning the duration, severity, and limiting effects of her symptoms are not generally credible." (AR 36.) The ALJ noted that in Madrigal's December 31, 2004 application for Disability Insurance Benefits, she initially alleged severe, disabling chronic pain syndrome, cumulative trauma disorder, insomnia, thoratic outlet syndrome, left lateral epicondylitis, cervical spondylitis, cerviothoratic myofascial pain syndrome, depression, sciatica, sleep apnea, gallstones, stomach problems, and foot pain. In a Request for Reconsideration filed on January 20, 2005, Madrigal alleged she had grown "more depressed with increased pain and swelling in the stomach, and reinjury of the foot, [and] difficulty with bowel movements (irritable bowel syndrome.") (AR 32.) The ALJ also noted that in her Request for Hearing filed on May 26, 2005, Madrigal alleged increased pain, more sleep disturbances, more depression and anxiety, eye problems, dizziness, crying spells, irregular heartbeat, numbness in the face, and diverticulosis. (*Id.*) After examining the record, the ALJ correctly observed that there was an absence of clinical signs and laboratory finding to support Madrigal's assertions. (AR 36.) The ALJ stated that Madrigal's own reports of worsening ailments were contradicted by her statements to her physicians that she was improving, and by her self-reported ability to perform significant daily activities. (*Id.*) In addition to Dr. Coleman's opinion, the ALJ expressly relied on the reports of examining Drs. Cohen,

No. C 09-04608 RS
ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

14

Lopez, and Chen, all of which showed that claimant's subjective reports had no physiological basis. (*Id.*)  *Morgan* makes it plain that, under the circumstances, Dr. Coleman's opinion constitutes substantial evidence.  Moreover, because the evidence here is "susceptible to more than one rational interpretation," the ALJ's decision must be upheld.

### 4. Madrigal's Mental Impairments

At step two of the sequential evaluation, the ALJ determines whether a claimant has a "severe" impairment or combination of impairments.  § 404.1520(a)(4)(ii).  Madrigal claims that the ALJ erred by failing to find her mental impairments "severe" at this step.

An impairment is severe if it significantly limits an individual's ability to do basic work activities.  SSR 96-3p, 1996 WL 374181 (S.S.A. July 2, 1996) (citing SSR 85-28, 1985 WL 56856 at *3-4 (1985)).  An abnormality does not significantly limit mental or physical ability when it is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Id.*  Basic work activities are defined as the abilities and aptitudes to do most jobs.  §§ 404.921(b)(1)-(6), 404.1520(b)(1)-(6).  Even if an impairment is found not severe at step two, at steps four and five the ALJ must consider the combined effect of the claimant's impairments without regard to whether each alone is severe.  42 U.S.C. § 423(d)(2)(B); *Smolen*, 80 F.3d at 1289-90; § 404.1523.  "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."  SSR 96-8p, 61 Fed. Reg. 34477 (S.S.A. July 2, 1996).

Social Security Ruling 85-28 governs the evaluation of whether an alleged impairment is severe.[10]  The Ruling states that an ALJ may deny a claim at step two "only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities."  SSR 85-28.  If such evidence establishes "only a slight abnormality(ies) which has no more than a minimal effect on a claimant's ability to do basic work activities," but there is also evidence that the claimant cannot perform her past relevant work, a denial of the claim at step two is "inappropriate." *Id.*; *see also Edlund v. Manssanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (clarifying that the severity concept of step two is "a de minimis screening device to dispose of groundless claims."); *Smolen*, 80 F.3d at 1290 (same).

In this case, the ALJ considered Madrigal's mental health history in detail.  The record contains substantial evidence to support the ALJ's determination that Madrigal's mental impairments were not "severe."  On October 19, 1999, Dr. Lopez gave Madrigal a GAF score of sixty, with only slight impairments.  Dr. Lopez commented, "Ms. Madrigal is permanent and stationary.  She is not precluded from going back to her usual work on a psychiatric basis."  On September 19, 2000, Dr. Lopez stated that Madrigal was not precluded from going back to her usual work.  Madrigal's treating psychologist, Dr. Isaac noted on January 3, 2000, that Madrigal's affect was "somewhat brighter" and "stabilizing."  On February 16, 2000, Dr. Isaac observed Madrigal was less anxious on Buspar and "more active and functional."  On April 6, 2000, Dr. Isaac noted that Madrigal's "permanent psychiatric disability *per se* would not preclude her from performing her customary work duties . . . ."  Dr. Isaac designated Madrigal's impairments as minimal to very slight at that time.  In 2003, Dr. Isaac confirmed that Madrigal's permanent psychiatric disability would not preclude her from performing her

---

[10] Social Security Rulings are binding on an ALJ.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) (citing *Han v. Bowen*, 882 F.2d 1453, 1457 & n.6 (9th Cir. 1989)).

customary work duties.  On December 15, 2001, Drs. Ahmad and Marinos examined Madrigal and stated that her recurrent major depressive disorder appeared to be partially controlled by medication.  Her test results suggested that she had adequate ability to perform activities of daily living, to remember, to carry out simple job instructions, and to function socially.  On December 9, 2004, upon examining Madrigal, Dr. Cohen reported that nothing about her presentation suggested "serious mental disorder or significant cognitive deficit that would result in a marked functional impairment with respect to sustained employment."

      Based on this evidence, the ALJ determined that none of Madrigal's mental impairments satisfied the criteria listed under section 12.04(B) and that the paragraph C criteria were not applicable to her case.[11]  The ALJ found that Madrigal had mild restriction in her activities of daily living, mild difficulty in social functioning, mild difficulty in maintaining concentration, persistence or pace, and had not experienced periods of decompensation of extended duration.  Even though the ALJ found Madrigal's mental impairments not severe at step two, he properly considered these impairments when he assessed Madrigal's RFC at step four of the sequential evaluation.  This Court has already held that the ALJ's RFC assessment is supported by substantial evidence. The ALJ's determination that Madrigal's mental impairments were not severe at step two of the sequential evaluation is also supported by substantial evidence, and free of legal error.

---

[11] Section 12.04 concerns the finding of severe impairments resulting from affective disorders.  Paragraph A lists specific disorders; if one of these disorders is established, it will satisfy the paragraph B criteria if it results in at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  § 12.04(B).  Alternatively, the impairment must meet or equal an impairment listed in paragraph C. § 12.04(C).

VI.   CONCLUSION

Having found the ALJ's decision is supported by substantial evidence and that the proper legal standards were applied, the Commissioner's cross-motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

IT IS SO ORDERED.

Dated: 02/25/2011

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE